Ruel LOWE, Special Administrator of the Estate of Ira E. Lowe, Deceased *v.* Mike RALPH and Cleta Ralph, Individually, In Their Own Rights, and As Parents and Next Friends of Tommy A. Ralph, Deceased, and Eric Michael Ralph, Mike Ralph, Individually

CA 97-1056                                             966 S.W.2d 283

Court of Appeals of Arkansas
Division I
Opinion delivered April 8, 1998

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson* and *Julia Busfield*, for appellant.

*Milligan Law Offices*, by: *Phillip J. Milligan*, for appellee.

ANDREE LAYTON ROAF, Judge. This is an appeal from a jury verdict in favor of the appellees, who were plaintiffs in a negligence case. The jury found that Ira Lowe, deceased, was negligent in causing the death of the appellees' sixteen-year-old son in an automobile accident, and awarded $500,000 in compensatory damages and $500,000 in punitive damages. The punitive damages were awarded based upon willful and wanton conduct by Lowe, who was intoxicated when the accident occurred. The appellant's sole point on appeal is that the trial court erred in excluding the testimony of one of his witnesses because of violation of the rule of sequestration. We agree that the trial court erred, and reverse and remand.

On a rainy day in April 1993, Ira Lowe and Tommy Ralph were involved in an automobile accident. Ralph was killed instantly when his car struck Lowe's vehicle. Lowe and one of Ralph's passengers, Jamie Owens Mooney, were injured and were transported to the hospital for medical treatment.

Ralph's parents, Mike and Cleta Ralph, subsequently filed suit against Lowe. Some time after the commencement of the lawsuit, Lowe died, and the action was continued against his estate. At trial, there was evidence that Lowe was intoxicated, and there was also testimony that Ralph had been "goofing off" immediately prior to the accident by jerking the steering wheel back and forth. There was also testimony that Ralph's car hydroplaned and he lost control of the car before hitting Lowe. In a deposition taken before he died, Lowe testified that he pulled off onto the shoulder of the road and stopped when he saw Ralph's car coming towards him. However, there was conflicting testimony at trial as to whether Lowe's vehicle was straddling the

center line of the road when the accident occurred, or completely in his own lane of traffic.

Mooney testified at trial. She stated that Lowe's car was stopped in the middle of the road at the time of the accident. Mooney was the only witness who placed Lowe in the center of the road at the moment of impact. Trooper Jerry Roberts, one of the officers at the scene of the accident, also testified. He stated that, based on his observation of the final resting place of the vehicles, the location of debris and scuff and gouge marks on the road surface, the accident occurred in Lowe's lane of traffic.

Roberts was later recalled, and during his direct examination, one of Lowe's witnesses, Anita Kramers, heard approximately thirty minutes of his testimony before Lowe's attorney became aware she was in the courtroom. Lowe's attorney immediately interrupted the proceedings and informed the court of her presence. Ralph's attorney then objected to allowing her to testify because she violated Ark. R. Evid. 615, the witness sequestration rule. The trial court ruled that although her actions were innocent, he had no discretion in the matter and was required by law to exclude her testimony. Kramers' testimony was then proffered for the record. Her testimony directly contradicted that of Mooney. In her proffer, she stated that she was the emergency medical technician who transported Lowe and Mooney to the hospital after the accident. She stated that, at the hospital, Mooney told her that Ralph had been "goofing off" when his car hydroplaned, Ralph lost control of the car, crossed the center line, and hit Lowe's car. Kramers further stated that Mooney admitted that the accident was Ralph's fault and not Lowe's fault. At the close of all the evidence, the jury found in favor of Ralph and awarded damages.

Lowe's sole point on appeal is the trial court committed reversible error when it excluded Kramers' testimony. He asserts that her testimony was crucial in that it would have impeached Mooney's testimony. He contends that the trial court has only very limited discretion to exclude the testimony, and should have utilized other available sanctions. We agree.

Rule 615 of the Arkansas Rules of Evidence provides:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Rule 615 was invoked upon oral motion by Lowe, and Kramers violated the sequestration rule when she sat in the courtroom and listened to a portion of Trooper Roberts' testimony.

■ Both parties assert that *Blaylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987), is controlling. We agree that it is controlling, and further conclude that it mandates reversal of this case. *Blaylock* involved a tort action for alienation of affection. The appellant was sued for allegedly engaging appellee's wife in a homosexual relationship. Following appellee's opening statement, his daughter approached opposing counsel and stated that she wanted to testify because the appellee's opening statement was untrue concerning appellant's conduct toward the couple's children. The daughter was called as a witness, however, the trial court excluded her testimony because of violation of Rule 615. The supreme court reversed, stating that the three possible methods of enforcement available to the trial judge when a violation of the sequestration rule has occurred are: (1) citing the witness for contempt; (2) permitting comment on the witness's noncompliance in order to reflect on her credibility; and (3) refusing to allow her testify. In addition, the court stated that the trial court has very narrow discretion in refusing to allow the testimony of a witness who violates the rule, and the discretion can only be exercised when the noncompliance occurs with the consent, connivance, or procurement by a party or his attorney. The court stated that since the daughter was an important witness, as conceded by both parties, it was not harmless error to exclude her testimony.

■ In Lowe's case, there was no evidence of the consent, connivance, or procurement by appellant or his attorney. In fact, Lowe's attorney immediately informed the court when he learned

that Kramers was present in the courtroom. His attorney asserted that Kramers heard no testimony that was pertinent to her own testimony, which was impeachment testimony. During voir dire, Kramers testified that she was unaware that she was not to be in the courtroom, and that when she arrived at the courthouse, someone from the clerk's office had told her to go in the court-room. Moreover, the trial court stated that Kramers' actions were absolutely innocent and unintentional, and there was no allegation of any misconduct by the appellant or his attorney. Finally, the testimony of Kramers contradicts the testimony of Mooney, the only witness who placed Lowe's car in the center of the road. The exclusion of her testimony was clearly prejudicial to Lowe. Under the circumstances, it was reversible error for the trial court to exclude Kramers' testimony, and we reverse and remand for a new trial.

Reversed and remanded.

AREY and STROUD, JJ., agree.